American Freedom Defense Initiative, et al. v. Massachusetts Bay Transportation Authority, et al. Mr. Mews. May it please the Court. I'm Robert Mews, and it's my honor and privilege to represent the plaintiffs' appellants in this important First Amendment case, and I would request to reserve three minutes of my time for rebuttal. You may have it. This case involves a consolidation of appeals in which preliminary injunctions were denied below. It involves a rejection of two public issue advertisements, advertisements that have been referred to in the pleadings as AFDI advertisements one and three, and the acceptance of one public issue advertisement, AFDI advertisement number two, in the context of the MBTA opening its advertising space to advertising on an exceedingly controversial political issue, that being the Israeli-Palestinian conflict, by the acceptance of the advertisement that's been referred to as the refugee advertisement, which, as this Court knows, created such a controversy amongst the ridership that it was temporarily removed only to be reinstated again by the MBTA. So plaintiffs contend that, based on the facts of this case, that the format issue is a public forum, particularly for plaintiff's speech, by the fact that the government, through the MBTA now, has opened this forum to a contentious debate on a political, a highly contested political issue, the Israeli-Palestinian conflict, the very issue You're saying Ridley does not apply on that particular point because they've opened it up for discussion of political issues. Is that the argument? The argument is, Your Honor, that's correct, because the forum analysis is not a static analysis. You determine the forum not only by the nature of the forum and the compatibility of the forum. We certainly know that this forum is of the nature that the advertisements can run. Your argument doesn't, in the end, depend on that, does it? Even if the Ridley characterization of the forum is correct, what are your arguments then that they are required to accept and publish this, at least the third advertisement? Right, and the argument is, regardless of the forum, is that the application of these restrictions in this case were both unreasonable and viewpoint-based. And reasonableness and viewpoint-based are requirements of speech restrictions. Regardless of the forum, they apply in a non-public forum. So even if this, the forum, the facts have not changed to the effect that this is not a public forum under layman. And I just want to briefly mention that point because I think the fundamental rule of law from the layman case, which this court acknowledged was really the Supreme Court case on point on the forum in this particular context, is in that case the court held that it wasn't a public forum created because the government had a consistently enforced policy where they only allowed innocuous and less controversial commercial and public service-oriented advertisements. Okay, believe me, we've read the briefs. Yes. We've all spent a lot of time thinking about this case. So let's put the type of forum question aside. Your two arguments are that it was, what, an unreasonable application of the no demeaning criteria to the first and the third. That's correct, Your Honor. And I think, you know, the... Okay. Right. Let's go to the third. Yes. What is unreasonable about the determination that the third advertisement was a demeaning advertisement? Well, first of all, you have to look at the advertisements in entire context. And what the MBTA has concluded in terms of what is and is not reasonable, and this is where the second advertisement comes into play because I think it's appropriate for the context, is the use of the term savage. If you use that term savage as a noun, it apparently violates this standard of demeaning and disparaging. However, if it's used as an adjective, it's not. I mean, that's just... What's unreasonable about that? Because what they're essentially doing... Yes. If you call someone a savage, do you consider that to be demeaning or disparaging? In the context of this advertisement, no, because the context is those engaged in jihad. Let me... Yes. First, the abstract question. Yes, ma'am. Wouldn't most people feel that calling someone a savage would be demeaning to them? Disparaging of them in the abstract, and then we'll get to your advertisement. With this qualifier, that is not possible to make that determination in the abstract. Okay. So with it... Let's go to the text of the advertisement. Can I just follow on that for a second? Yes, sure.  I think what's... And this is where the reasonableness and the viewpoint-based kind of run into each other and overlap, I think, in many respects. And looking in the context of this advertisement, they're talking about those who engage in jihad. And remember, this is a response... I got it. So you think that's because it's justified to call them a savage. Is that the idea? I think it's their viewpoint that they're trying to express in this particular advertisement. Well, then, I'm just going back to Chief Judge Lynch's question to you. Is it disparaging or demeaning? I understand it might be that they have a disparaging or demeaning viewpoint, but that's separate from the first question. Is it disparaging or demeaning to call someone a savage? I don't think it's any more or less disparaging or demeaning than what the refugee advertiser... Maybe so, but that's not my question. My question is, is it disparaging or demeaning to call someone a savage? In the context of this advertisement, I would say no. No, and why not? Because, again, if the standard... Because, remember, the standard requires what an objective rider of the MBTA would conclude. And I don't think an objective rider of the MBTA would conclude that those who engage in jihad, particularly here in Massachusetts where we have the Boston Marathon and so on, that those who engage in jihad, describing those as savages, is not demeaning. It's not in the same context as me saying Judge Barron is a savage. I understand, but is that because it would be less justified to call me that than it would be to call them? I think in the context, it's appropriate. In the context of this conflict, this violent conflict. Does that raise... If that's your argument, that sounds to me like you're asking the MBTA to make a viewpoint judgment. Whether certain savages deserve the appellation and other ones don't. That seems like a First Amendment problem in itself that you're asking us to adopt in order for you to win. Not necessarily. In many respects, it's why I think Ridley's holding on the facial challenge to this is problematic for these very reasons that we're dealing with. But why was it... If the MBTA can apparently make that determination by saying those who engage in savage acts is not demeaning or disparaging, but saying that those same people who are engaging in savage acts, those engaging in violent jihad as savages, but that somehow is reasonable. To me, that example demonstrates the absurdity and the unreasonableness of this, of trying to apply this particular standard, but yet calling Israelis who are creating these Palestinian refugees, which by definition means that they're persecuting them on the basis of religion or other bases, is not demeaning? Counsel, if you keep running all of your arguments together and you keep seeming to think it's self-evident what you're saying, we've been trying to ask you discrete questions that accord more with the legal analysis we have to go through. Judge Saul. Is there a difference between being able to say this is a savage act and people who do savage acts are savages? And if you take that term and limit it so you are using it in respect to the people who do the act, so it is not a group libel, does that make a difference? Or would it make a difference? I don't see how that makes a difference, Your Honor. If you say those who engage in jihad or engaging in savage acts or those who engage in jihad are savages, there's no, that's why, and I apologize, Your Honor, but the facts matter. And that is what your ad says, yes? Those who engage in jihad are savages. And then in ad three, those who engage in violent jihad are savages. But the messaging, the thrust of the messaging is a lot different. It would be a lot different, for example, than saying, you know, the Sarnoff brothers are responsible for engaging in the, you know, wrongful death of individuals as opposed to saying the Sarnoff brothers are killers. I mean, those two things are. Ron, you just were telling us before that when used as an adjective, it's no different than when used as a noun. No, I'm saying that a standard that makes that distinction is an unreasonable standard. And the reason you said it was unreasonable is because there's no meaningful distinction between those two things. There's no meaningful distinction. But now you're saying there is a meaningful distinction, and our viewpoint can only be expressed if we can draw that distinction. Yeah, because now you're running into a viewpoint issue. Because as this court said in Ridley, changing the thrust and the effectiveness of an advertisement, and certainly if you can convey that message by using the term savage as opposed to, you know, lengthening it out and making it a more complicated ad even visually to understand, you are undermining the effectiveness of that message. Let me restate your argument, sir, if I understand it. Your argument is both of these things are disparaging and demeaning statements, whether you say they engage in savage acts or whether you engage whether you are a savage, right? Both of these things are intended to be. I'm not saying that. I'm saying in the context of this advertisement, an objective reasonable observer of the MBTA ridership would not consider it to be demeaning or disparaging to describe those engaged in violent jihad as savage. Because? Because in the context of those engaging in acts that kill innocent civilians, it is a savage act. And therefore they are savages? Well, somebody who engages in savage acts, I think it's appropriate to call that person a savage. Somebody who lies, it's appropriate to call them a liar. Somebody who engages in immoral acts, it's appropriate to call them immoral. Now, on their standards, you could say somebody engages in immoral acts, but you couldn't say he's immoral. You could say somebody lies under oath, but he's not a liar. It's absurd on its face that the First Amendment rises or falls on the question of whether a particular term, because they admit here that savage itself is not a term that is prescribed, right? It's not obscenity. It's not on some list of forbidden words under the restrictions. Unless, of course, it's disparaging or demeaning to call someone a savage. As opposed to that person engages in savage acts. But they approve that person and those engaged in savage acts. You rejected that. It's not at all clear to me why. And then came back with an ad that altered some order, but put in violent jihad.  Yes, ma'am. Obviously, we're going to be running over in time. But even if some readers would read your third ad as, in any war between the civilized man and the savage, support the civilized man, defeat violent jihad. Suppose some readers would read that as demeaning. Some readers would not because you've added the word violent. But what makes the MBTA's concern that some writers would view it this way, some might view it the other way, but they don't want to give offense with demeaning ads. What makes that decision unreasonable? I think it makes it unreasonable, again, in the entire context. And I hate to keep going back to this, but that's... So that goes then to your viewpoint discrimination because they effectively allowed a pro-Palestinian ad. Is that the bottom line? Does your argument ultimately depend on that viewpoint discrimination? Not just on that, but that's one evidence of viewpoint discrimination, as this Court noted in Ridley. Is it because there were complaints with the refugee advertisement? Yes, we all know the history.  Right. Suppose the Court were to think it is not viewpoint discrimination, that it at least... But as to advertisement number three, it's a closer question. Why would you be entitled to an injunction under those circumstances? If you find that there was viewpoint discrimination? No, there is no viewpoint discrimination. This turns on your argument of unreasonableness of the application of their rules to advertisement number three. Right, and so if you find that the application of the rules were unreasonable as to advertisement number three... Okay, let's assume that. Why are you entitled to a preliminary injunction? Is the federal court really in the role of saying the language of number three, we ordered the T to do that when they said the language of number two is what they would run? Well, because my clients want to run advertisement number three. I know, but given the criteria for preliminary injunctive relief... And I think it's a Fortuno case that this court decided to, and this court decided, and other courts as well, that when you're dealing with a preliminary injunction, the substantial likelihood of success is often the linchpin for determining whether an injunction should issue in the First Amendment context. And if this court concludes that the application of their advertising guidelines were unreasonable as to advertisement number three, an injunction should issue. Because not only then have we shown a substantial likelihood of success, but we have also shown irreparable harm because the Elrod case and all the others... Because it would just be an unjustified restriction on your First Amendment speech activity. It would have been a restriction on speech. Go ahead. If we put aside the Palestinian ad, let's say there never had been a Palestinian ad. All we've got is this ad. It's the only ad. It's the third ad. Right. Okay. Your argument as to it being unreasonable to prohibit that ad is, if I understand you, that there's no distinction between that ad and the second ad. And therefore, if the MBTA permits the second ad, they have no reasonable basis for rejecting the third ad because they're giving functionally identically hostile comments in both the second and the third ad? Is that the argument? I would tighten it this way, Your Honor. Okay. The acceptance of the second ad and rejection of the first and third demonstrates that the application of the demeaning and disparaging is unreasonable because it rises or falls on the question of whether or not a word that's not prohibited is an adjective or not. That's what I'd say for the reasonable. The thrust of those messages are different. I understand. And so just to say to us it's not the same to run the second advertisement as the third because you are affecting the viewpoint we want to convey, but they demonstrate the unreasonableness. So that's what I'm saying. There is this little bit of an overlap between the unreasonableness and the viewpoint. Judge Stahl has a question. Yes, Your Honor. I'd like to go back to something you said about the pro-Palestinian ad. This is all fairly subjective when you look at these ads as to whether they're demeaning, what they do. So somebody makes a subjective determination on each ad when they decide whether they're going to run it or not. Does the MBTA in accepting the pro-Palestinian ad have some obligation to determine whether it's truthful because that ad says that there are 4.5 million refugees caused by the Israelis. If one goes onto the website of the United Nations, you find out there are 750,000, but there are 4.5 million people who are eligible if they're male descendants who are eligible for some kind of help, refugee help, but they're not refugees. Does that make a difference whether they look at the ad and say, yes, this ad is correct because we've checked it out, or they just say, well, it's benign, so it's okay? Well, the first premise, I don't think, based on United Food in particular and other cases we cited, that it's supposed to be a subjective endeavor. There should be an objective basis for restricted speech to begin with, number one. Okay, now answer the question. And then the second part of it is I think it's very problematic because the Israeli advertisement, like our client's advertisement, isn't commercial advertising. It's public issue advertisement, and New York Times versus Sullivan. Is there anything in the regs that requires the T to check out the truthfulness? No, and I would think it would be problematic for them to do that under New York Times versus Sullivan. I guess that's the point I want to get to. So, therefore, then, because you've hit it, so because they can't or do that, then do they have some obligation on the other side to let conflicting ads be used in the T? Well, in this case the choice of words. You're arguing that their choice of words should permit them to do that. By opening, and this goes back to that form question, by opening it to controversial speech, public issue speech on such a controversial issue, they've opened it up. And when they become now the arbiters of what is the truth and not the truth, that's problematic. And when you look at the Palestinian ad, they had actual evidence that it was demeaning, disparaging by the complaints, but yet they reinstated it, which then goes back to evidence of the viewpoint discrimination. Whether it's a public forum or not, don't we finally? Well, I mean, that's an issue. That's your argument. My argument doesn't have to rise or fall on that, because I think regardless of the forum it's unreasonable and it's viewpoint based. We know. Right. Any further questions? Thank you. You have three minutes reserved. Thank you. Mr. Steinfeld, good morning. May it please the court, my name is Joseph Steinfeld. With me is Jeffrey Pyle. We represent the MBTA and its general manager, Beverly Scott. I hope to cover in my presentation each of the points that you have raised during Mr. Muses' argument. First, Judge Gorton applied the applicable standard under Ridley for a limited public forum, which is whether the MBTA reasonably and without viewpoint discrimination in rejecting the plaintiff's ads did so on the basis that they disparaged or demeaned Muslims or Palestinians. And he followed the court's Ridley directive that when you make that determination, the standard does not create an exceptionally high hurdle. It necessarily involves some degree of discretion, and there can be more than one reasonable decision. Now, the plaintiffs go off the track in several significant ways. Ostensibly in their briefs deferring to Ridley while at the same time ignoring what it says. Here are the points I hope to address this morning. First, what I call the open door argument. The theory that once the refugee ad was accepted, the MBTA had no choice but to accept AFDI's ad. Then the question of viewpoint discrimination. Third, plaintiffs' criticism of what they call the civility standard created by the guidelines. Fourth, the so-called unbridled discretion argument. And finally, if time allows, I hope to take a moment and talk about the First Amendment principles that are raised in this case. First, the open door. The plaintiffs here, albeit begrudgingly, acknowledge that the MBTA is a limited public forum, but then they say, well, this is an exception because the MBTA consciously decided to accept the refugee advertisement. And therefore, they say, once they allowed discussion of the Israeli-Palestinian conflict, the T created a designated public forum for that speech. That's the argument. Their theory is that if a subject is controversial, then the forum becomes a public forum, a designated public forum. But there's no authority that would support that proposition, because if that proposition were correct, what it would mean is that you cannot have a limited public forum unless you avoid all controversial subjects. There is no law that says that, and Ridley, indeed, says the contrary. Now, the plaintiffs here accuse the MBTA of sweeping under the rug the fact that the refugee ad created some degree of public criticism. And what they do is they treat that refugee ad as the Rubicon that once crossed created a point of no return, insofar as the plaintiff's submissions are concerned, which is simply incorrect. These guidelines, in addition to the demeaning and disparaging prohibition, contain 12 forbidden categories. This is on the forum point still. So if we put aside the forum for a second, let's say we agree with you it's a limited or non-public forum. We have the reasonableness and the viewpoint issue. And when we were questioning counsel just a moment ago, if we put aside the Palestinian ad for a second, they make an argument that it is unreasonable in the way that the MBTA is applying this guideline to make a distinction between the use of savage as a noun and an adjective, such that the second ad under your guidelines is viewed as not hostile to a group or individuals, and the third ad you view as hostile or debases the dignity, et cetera. Could you just address that, why it's reasonable to draw that distinction? Yes, you are. That's what they call the linguistic contortion theory. When the plaintiffs submitted their second ad, designed as Ms. Geller stated in her submission to the MBTA, to conform to Judge Gorton's ruling, the same officials who had rejected ad one accepted that second ad because they saw a difference between labeling a group of individuals as savages, which is how they interpreted ad one. It is how Judge Gorton interpreted that language. It is how Judge Engelmeyer interpreted the identical language in the Southern District of New York. It is as Judge Collier interpreted the identical language in the District of Columbia case, all submissions by this same plaintiff. And the T saw a difference between that on the one hand and the use of this word savage as an adjective in criticizing those who engage in savage acts. Are you two judges eager to question you on that? Let's assume the ad said something like this. I'm sorry, Your Honor. Let's assume the ad said something like this. Don't support savages who engage in violent jihad. What would you say to that? I would believe, Your Honor, that it would be reasonable for the MBTA to accept that ad. How can that be? Well, it can be in this way. How a sentence is constructed, how these words are used makes a difference. If one criticizes the Nazi Party for committing savage acts against Jews during the Holocaust, that surely is, in my view at least, a reasonable presentation by somebody who wants to submit such an ad. Captain, if the ad said that the Nazis are savages, is that permissible? Yes. Because? Because it's akin to the doctrine of the libel-proof plaintiff. There are, to be sure, certain people in history and in life who are libel-proof. So let me just follow. So if this same ad, instead of saying fight violent jihad, it said fight ISIL, that would be fine, too? You would accept that ad? Yes. Yes. So can you explain how this is consistent with RAV, if that's the MBTA's policy? Because it sounds like what you're doing is distinguishing between groups that you think it's okay to demean and groups you think it's not okay to demean. Yes, I can. The MBTA officials are vested with the responsibility and the obligation to apply community standards, which the Ridley opinion says we accept, and to do so in a reasonable way and look at the viewpoint of the ridership of this transportation system, which, as Lehman emphasizes, involves a captive audience. And in so doing, it is one thing to make a statement that demeans Islam, demeans Palestinians, or could reasonably be so interpreted. It is another thing to address a statement that does not, to quote Justice Frankfurter, quoted in the Ridley case, burn down the barn to roast the pig, or worse to that effect. So what I'm saying is just this. The discretion that is imposed on the MBTA officials to act reasonably will call upon them to make difficult judgments, to be sure, and it does not The nature of the judgment you want the MBTA to make is to suss out which groups the public really despises and which ones they don't? There may be, to some extent, a gray area where it's not so clear. I get that. I don't believe the Nazis or ISIS or serial killers would fall on that side of the spectrum, and therefore it does not have to be, under the case law, the reasonable decision. Indeed, Judge Gorton had some concern, as he wrote in his opinion, but it is a reasonable decision. I think you're quite grasping my question. My question is, in a case in which the MBTA is certain that the public really despises a group, it's okay then to demean them. That's your view? If the MBTA reasonably decides that that ad demeans an individual or group of individuals, from the point of view of its ridership, yes, it may and should eliminate that ad. But may I, with deference to my colleagues, that isn't this case, right? You are being asked to take your position to an extreme point. That is not the issue which is facing us. And I understand your argument to be that you didn't make a judgment about the group here, other than you thought it referred to Muslims and, in particular, Palestinians, and that is a different situation than ISIS or the Nazis. Well, thank you, Your Honor, for rescuing me on that score, and I agree with you. Before you get totally rescued, let me just ask this. So I appreciate that my understanding about the MBTA's position is, in order for it to be a reasonable application of the reg here, it has to be reasonable to conclude that the third ad was demeaning of Palestinians or Muslims, in the way that the first ad was. Correct. Virtually identical ad. Could you explain how you can say it's reasonable to think that it was demeaning of Muslims when the word violent precedes the word jihad, given that Judge Gorton explained that jihad is an ambiguous word. It might mean a religious reflection. He does not say that violent jihad is a religious word. And so could you just clarify on that point for us? Your Honor, if you put yourself, as the T officials do, in the position of the ridership, you see these big letters, and then down below it, in somewhat smaller print, you see they've added the word violent, and they invite the riders to look at the website. Now, that raises an important point, because if you look at the website, which, by the way, the Sixth Circuit, in the smart case, says you can and should, citing Ridley, then what do you find? You find an overtly anti-Islam website that refers to Islam as, quote, this savage seventh century culture. That's in the website, and which further, in the latest posting, the one that announces this argument today, overtly accuses the MBTA of being anti-Semitic for having refused their ad. So it isn't just that the third ad inserts the word violent jihad. It is that it remains reasonable to interpret the thrust of that third ad as the meaning of more than just terrorists, but it sweeps Islam and Palestinians into that ad. But the ad doesn't do that, in fairness. Whatever's on the website, there are many things on websites. But the MBTA has accepted the pro-Palestinian ad, and as rightly said hundreds of times, they don't have to look to the truthfulness of that ad, but that ad, because many people apparently thought it was untruthful, they objected to the MBTA. The MBTA made the decision to leave that ad on. So I have difficulty with your positions on that, because one ad says, the third ad seems to me, meets the criteria that they have espoused. Two points. First, on the refugee ad, that ad appears to reflect shrinking Palestinian land, and it states the UN has classified 4.7 Palestinians as refugees. It doesn't demean or disparage any individual or any group of individuals. Point one. Point two. Judge Gorton took umbrage with that third ad, and it raises another question here, because what he accused the plaintiffs of doing was engaging in a form of gamesmanship after the MBTA, taking the second ad and considering it, agreed to accept it. But they weren't willing to take yes for an answer. And so on that score, it seems to me, the standard of review with respect to the third ad is a little different. I suggest he did not abuse his discretion when he rejected that ad. All right. Stripping away the question of the Palestinian ad, and stripping away the website reference, just looking at violent jihad, my view of this is admittedly a bit different. My view is that savage and violent jihad, violence, does not equal being a savage. Too many governments use violence. Even if it is a violent jihad, that does not mean that savage acts will be performed. At this point in our history, if this ad were to run, I would think readers would think about the beheadings done by ISIS rather than Palestinians who have a different view from ISIS. And so that on the term violent itself, a reasonable person could still draw the conclusion that this is demeaning or disparaging. Israel and Palestine have been at war for years. All sorts of violent acts have been performed on both sides of this. Now, Judge Gorton, he stated this as an independent ground, that this is still reasonable. And then he came in with the plaintiffs have acted in bad faith. I don't know of any evidentiary basis to label what they did bad faith. From their point of view, they're trying to get the ad with the most punch possible. But it would seem to me that in issuing a preliminary injunction and considering the public interest and the equities on both sides, that it could be relevant to a district court's decision whether they have rejected an ad which seems to accomplish much of the same thing. But is there any basis in the record for bad faith? Your Honor, I agree with everything you just said. I thought you might. And in terms of bad faith, what the record reflects is a submission by Ms. Geller in which she said, we've tweaked this ad in order to be reasonable and to comply with Judge Gorton. And the T accepts. Thereby putting the lie to this whole notion about viewpoint discrimination, the other point I believe that you raised, Judge Barron, earlier. Not to mention the fact that the T has accepted all of these other pro-Israeli ads. So the T accepts that ad, and then Ms. Geller takes it back and submits what I believe to be substantially the same as ad one, thereby showing that this was not on her part. It was an effort to get across a message. It was an effort to engage, speaking of verbal gymnastics, in just that. And Judge Gorton could have inferred, as he did, that they were not in good faith because the second ad was nothing but a stalking horse for the third ad. That's not why the MBTA rejected the third ad, because she was playing games. That is correct. You are absolutely correct. The MBTA can't do that. The MBTA has to examine each ad on its merits. I agree with you. Putting that to one side, could I just ask you crisply, what is the argument that MBTA makes in response to the plaintiff's contention that the distinction between the use of savage as a noun and the use of savage as an adjective is an incoherent or meaningless statement? Just in the abstract, because I take it one argument for MBTA is we're not engaged in viewpoint, it's just a style or form regulation, and if you use savage as a noun, it doesn't matter what group you use it against, we think that's disparaging. What's the logic of saying it's okay to use it as an adjective but impermissible to use it as a noun? Well, I'll take off my lawyer's hat and go back to being an undergraduate English major, if I may. The labeling of a group as savages demeans that group. That question was raised earlier. I don't see how anyone could contend otherwise. If, however, you say, I condemn those who engage in savage acts, for example, the concentration camps in World War II, or some other example, you have conveyed an entirely different meaning. That's my answer to your question. That meaning being what? That meaning being that you are not demeaning or disparaging an individual or group of individuals, you are making reference to a specific, horrific, vicious act, and that you're allowed to do. Okay, terrific. Can I just one last one? In Ridley, we, I think, sort of expressed with some approval the distinction from the earlier reg which targeted disparagement of only certain protected groups, religions, et cetera, and the extension of it to the protection of the use of disparaging language towards any individual. Okay, and just to clarify something, as the MBTA now understands their reg, do they understand that reg to prohibit the disparagement of any individual, or do they understand it to apply only to the disparagement of certain groups that it believes the ridership would view as not really hated? This is the hypothetical. No, this is to understand what the reg you're applying is. I'm somewhat reluctant to answer how the MBTA would regard this, but as I recall it, lawyers in my shoes should respond to the judge's question, and so I will. And it is this. The MBTA officials ought to consider and do consider the ridership, the captive audience that rides the T. I do not take the position that all individuals, no matter who they are, are entitled to the benefit of this standard. I think that is an extreme and unnecessary position, and I do not believe it is the MBTA's position. If I may, just, do I have another half a minute? Yes. I just wanted to mention Delgado versus Parrott, which is the more recent First Circuit case following Ridley. It's the post office sidewalk case. And I mention it only because, as in the Supreme Court cases, there is this important First Amendment notion that if you take an all or nothing view, which is essentially the plaintiff's view in this case, you may end up with less speech, not more speech. And so in a broader constitutional sense, I would suggest to you that the MBTA's policies and how they have been administered in this case are pro-speech. Thank you. Mr. Muse. Thank you. I appreciate all the patience with this. I realize it's an important case. Certainly from my perspective, I want to say unequivocally, government censorship of speech is not a game. And so we take it very seriously. None of those advertisements were submitted for any purposes of gamesmanship, but to challenge the government's censorship of speech. And Judge Barron, you hit the nail on the head, and I appreciate Chief Judge Lynch's attempt to want to rescue the MBTA here, but you nailed it. When he said that it's okay under the MBTA's regulations to say that Nazis are savages, why isn't that demeaning or disparaging to Germans? Our advertisement, if you read our advertisement, it doesn't mention Islam. It doesn't even use the word. It doesn't mention Muslim. It doesn't even mention Palestinian. Those who engage in jihad against Israel, from my client's perspective, the view they want to convey is Hamas. Hamas is a terrorist organization. They are savages. And if they can say Nazis are savages, we can say those who engage in jihad against Israel are savages because they are Hamas. And for him to say, no, you can't, that's the government picking and choosing the R.A.V. issue, Judge Barron. The R.A.V. here, which you could just help me with, which is that although that's what the MBTA has stated how they think about it, the truth is they prohibited the first ad and the third ad. So that's actually consistent with what you're now saying. As much as it may seem odd that this has happened, the truth is whether you say it's jihad, whether you say it's Muslim, whether you say it's Palestinian, whether you say it's violent jihad, whether you say it's terrorist, on this record, the indication is so long as you use savage as a noun, they'll prohibit the ad. And we have nothing else to show that they're going to act inconsistent with that other than the representation of the MBTA about how they think about it. So what are we supposed to do with that? And I think if you look at this advertisement itself, and in context with that representation, that's the very point that we've been making throughout this. It is. This is a problem where you're running into the reasonable issue is overlapping with the viewpoint issue. Because for them to say, an example, using the examples, Nazis are savages, but you can't say those engaged in jihad are savages, but you can say they engage in savage acts. I mean, it is linguistic contortions that don't provide any objective measure. We're talking about the government being censors of speech on a very contentious issue, which goes to the point that was made about New York Times applying to this kind of speech is the problem with why now, if they've opened it up to this very contentious issue, that we're no longer in that limited public forum, non-public forum, where we're just doing innocuous commercial and service-oriented advertisements. We're opening this forum up to this sort of hotly contested debate, and the government can't pick or choose. Given the legal fees everyone's paying, one might wonder whether this was the wisest choice on their part. But that is not an issue for us. Right. Well, government censorship is an issue. May we know it. Yes. Thank you. Thank you both. It's been a pleasure.